PEOPLE ex rel. CONTI v. KEMPNER et al.

(Supreme Court, Appellate Division, Second Department. April 21, 1911.)

1. Courts (§ 56*)—Magistrates' Courts—Interpreters—Removal.
    A provision of Laws 1910, c. 659, § 103, authorizing removal of interpreters for the Magistrates' Courts, after an opportunity to explain, applies to interpreters appointed under Laws 1875, c. 623, as well as to interpreters appointed under the later law.
    [Ed. Note.—For other cases, see Courts, Dec. Dig. § 56.*]

2. Courts (§ 43*)—Magistrates' Courts—Interpreters—Tenure—Legislative Power.
    In creating the new Magistrates' Courts under Laws 1910, c. 659, the Legislature could determine the manner of appointing and removing officers so far as not in conflict with the civil service provisions of the Constitution, and could change the tenure of interpreters so as to permit removal after opportunity to explain as provided by section 103 of such chapter, instead of retaining the provision of Laws 1875, c. 623, for removal for cause.
    [Ed. Note.—For other cases, see Courts, Dec. Dig. § 43.*]

3. Statutes (§ 224*)—Construction—Conflicting Provisions.
    On a conflict between existing statutes, the later controls.
    [Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 300–306; Dec. Dig. § 224.*]

Appeal from Special Term, Kings County.

Application by the People of the State of New York, on the relation of Thomas O. Conti, for prohibition against Otto Kempner and others. From an order denying a writ, relator appeals. Affirmed.

The following is the opinion of PUTNAM, J., at Special Term.

[1] This is an application for a writ of prohibition to the board of city magistrates of the Second division of the city of New York who on August 24th were about to try charges against the relator, an Italian court interpreter, for being irregular in attendance upon said Magistrates' Courts. In 1897 Mr. Conti was appointed interpreter for the Brooklyn Police Courts by the Brooklyn common council by virtue of chapter 623, Laws of 1875, which authorized the common council to appoint such interpreters, prescribe the duties, fill vacancies, fix salaries, and to remove them from office for cause. Under the Greater New York charter, he was continued with other Brooklyn interpreters, some 12 in number, who appeared to have been recognized as having a special tenure under control of the municipal assembly, the successor to the Brooklyn common council. When the Magistrates' Courts were formed, he was also continued there as interpreter.

The question is now raised as to his status in the Magistrates' Courts created by chapter 659, Laws of 1910, which declares that all interpreters (with deputy clerks, stenographers, etc.) may be removed by the board of magistrates "after an opportunity of making an explanation" (section 103). The relator, however, urges that this power of removal after explanation (which follows the wording of section 22 of the civil service law [Consol. Laws 1909, c. 7]) is not applicable to interpreters already serving in the old Magistrates' Courts, but affects only those interpreters whom the new boards of magistrates may appoint. The Legislature, however, have met this by section 56 (Laws 1910, c. 659), which provides that: "All clerks, assistants, stenographers, interpreters, and other employés of the Magistrates' Courts shall be continued without reappointment, subject to removal, as provided in this act." And this legislative intent to subject all the court officers to a common uniform power of removal, without discrimination for or against those continued from prior office, is found in other parts of the inferior criminal courts act.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Where prior incumbents are continued in office, the very provision therefor declares this continuance subject to removal "as provided by this act," as in the case of police clerks (section 55) and of officers and employés of the Court of Special Sessions (section 17). Obviously such power of removal is not only required for the dignity and efficiency of the court, but a uniform condition for the exercise of the power of removal after an opportunity for explanation becomes a needed protection for the incumbent. The final repealing clause (section 120) does not mention this act of 1875, although it may be considered to come within the general reference to acts inconsistent or in conflict therewith. The repealing clause did not take effect on the passage of the bill in June last, but is declared not to go into effect until on and after September 1st. The relator therefore urges that the act of 1875, under which he was appointed, is still in force, or was not repealed in August at the time he applied for this writ.

[2] In creating the new courts, the Legislature had power to determine the manner of appointment and the method of removal—so far as not in conflict with the civil service provisions of the Constitution—and unquestionably the right to change the tenure of office of a court interpreter (People v. McCarthy, 10 Abb. N. C. 418), so that he should be given "an opportunity of making an explanation," instead of being subject to removal merely "for cause" as by the act of 1875. This change took effect on the passage of the act of 1910, so that, when the relator was continued in office, he became at once subject to the powers of removal then enacted. Here the point is as to the power of the board of city magistrates, not as to a possible conflict with the authority of some other body. The power to remove any court interpreter in their courts is clearly conferred.

[3] Even if the provisions designed by repealing inconsistent statutes to harmonize the series of prior acts have not fully taken effect, and a conflict remains, the latest expression of the legislative will controls. Stack v. City of Brooklyn, 150 N. Y. 335, 345, 44 N. E. 1030. The power to remove and to try the relator and to hear and consider his explanation, if any, of the charges against him, was vested in the board of city magistrates of the Second division at the time of the relator's application. and therefore the magistrates could not be prohibited from exercising their jurisdiction. The motion for writ of prohibition is denied.

Argued before JENKS, P. J., and HIRSCHBERG, BURR, RICH, and WOODWARD, JJ.

Samuel J. Siegel, for appellant.

Archibald R. Watson, Corp. Counsel (James D. Bell and Sanders Shanks, of counsel), for respondents.

PER CURIAM. Order affirmed, with $10 costs and disbursements, on the opinion of Mr. Justice PUTNAM at Special Term.

---

### SMITH v. RUSSELL et al.

(Supreme Court, Appellate Division, Third Department. May 3, 1911.)

1. CONTRACTS (§ 350*)—BUILDING CONTRACT—EVIDENCE.

In an action for unpaid contract price for building a schoolhouse, evidence *held* to justify judgment for plaintiff.

[Ed. Note.—For other cases, see Contracts, Dec. Dig. § 350.*]

2. CONTRACTS (§ 305*)—BUILDING CONTRACTS—WAIVER OF DEFECTS.

Where the evidence showed that plaintiff, a contractor for a building, had received a letter from defendant saying that his money was ready

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes